In re HIGH VOLTAGE ENGINEER-
ING CORPORATION, et al., Re-
organized Debtors.

Civil Action No. 07–10485–RWZ.

United States District Court,
D. Massachusetts.

Sept. 26, 2007.

Mark W. Powers, Bowditch & Dewey, LLP, Boston, MA, Michael J. Venditto, Anderson, Kill& Olick, New York, NY, George W. Tetler, III, Bowditch & Dewey LLP, Worcester, MA, for Appellant.

Kevin M. McGinty, Scott H. Moskol, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, Mark Thompson, Simpson Thacher & Bartlett, New York, NY, Andrew Z. Schwartz, Foley Hoag LLP, Boston, MA, Robert J. Rosenberg, Latham & Watkins, New York, NY, John J. Curtin, Jr., Peter Sabin Willett, Francesca L. Miceli, Rheba Rutkowski, Bingham McCutchen LLP, Megan C. Deluhery, Todd & Weld, Boston, MA, Robert E. Juceam, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, Michael J. Sage, Stroock & Stroock & Lavan LLP, New York, NY, for Appellees.

*MEMORANDUM OF DECISION
AND ORDER*

ZOBEL, District Judge.

## I. Introduction

The bankruptcy court denied a motion by the liquidation trustee of the debtor, High Voltage Engineering Corporation ("HVE"), to vacate earlier orders allowing administrative expense claims of several professionals. The liquidation trustee appeals.

## II. Factual and Procedural Background[1]

### A. The 2004 Restructuring Agreement

In mid–2003, HVE, a holding company owning energy and manufacturing companies, had trouble meeting its obligations to its creditors. At the time, the largest group of unsecured creditors were holders of $155 million in Senior Notes (the "Noteholders"). HVE began negotiations with an unofficial committee of holders of these notes (the "Unofficial Committee"), which retained appellee Jefferies & Company, Inc. ("Jefferies") to serve as its financial advisor in the negotiations. HVE retained appellee Evercore Restructuring L.L.C., successor to Evercore Restructuring L.P. (collectively "Evercore"), as its financial advisor. Later, HVE also retained appellee law firm Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank") as one of several counsel in connection with the restructuring.

In February 2004, HVE reached an agreement (the "Restructuring Agreement") with a majority of the Noteholders to declare Chapter 11 bankruptcy. Under this agreement, trade creditors were to be paid in full and the Noteholders were to exchange their outstanding debt for substantially all the equity in the reorganized company.

### B. The 2004 Chapter 11 Bankruptcy Filing (the "2004 Cases")

On March 1, 2004, HVE and several of its subsidiaries (the "2004 Debtors") filed for relief under Chapter 11 of the Bankruptcy Code as contemplated by the Restructuring Agreement. The bankruptcy court authorized the continued employment of appellees Evercore and Fried Frank by the 2004 Debtors, and Jefferies was retained to advise the Official Committee of Unsecured Creditors (the "2004 Committee"). The 2004 Committee retained appellee Stroock & Stroock & Lavan LLP ("Stroock," collectively with Evercore, Jefferies and Fried Frank, the "Professionals") as counsel.

On July 21, 2004, the bankruptcy court confirmed the Third Amended Joint Chapter 11 Reorganization Plan (the "2004 Plan"). On August 1, 2004, the effective date of the 2004 Plan, all of the existing Senior Notes were canceled, and the Noteholders received 97% of the common stock of the reorganized company. The reorganized company retained the exclusive right to enforce any and all causes of action of the 2004 Debtors. On November 8, 2004, the bankruptcy court entered a series of orders awarding compensation to the Professionals for their work in the 2004 Cases. (*See* Docket 04–11586#1051–52, 1054–55.)

### C. The 2005 Chapter 11 Bankruptcy Filing (the "2005 Cases")

The financial projections provided to the court in the 2004 bankruptcy filing proved to be excessively optimistic, and the reorganized company quickly found itself back

---

1. Much of the factual and procedural background is repeated from this court's opinion in a related case: 06–cv–11444–RWZ (Docket # 60).

in a cash crisis. Several subsidiaries of the reorganized company began delaying payments to suppliers and, as a result, key suppliers refused to ship on credit terms. Barely six months after the approval of the reorganization, on February 8, 2005, the reorganized company, including certain subsidiaries (the "2005 Debtors") sought bankruptcy protection for a second time. The bankruptcy court *sua sponte* appointed a Chapter 11 Trustee who filed a plan of liquidation, confirmed on July 10, 2006 (the "2006 Plan"). The 2006 Plan paid all administrative, secured and unsecured claims in full with interest and anticipated distributing $54 to $56 million to the Equity Holders. The Equity Holders, consisting primarily of the former Noteholders, voted to accept the 2006 Plan, and all claims of the Debtors and the Equity Holders were transferred to the Liquidation Trust. The Liquidation Trustee (the "Trustee") was given authority to pursue these claims.

### D. The Trustee's Duplicate Rule 60(b) Motions to Vacate and Reconsider the Expense Claims of the Professionals

On November 9, 2005, prior to the confirmation of the 2006 Plan, the Chapter 11 Trustee filed a Rule 60(b) motion in the 2004 Cases to vacate the orders of the court and reconsider the administrative expense claims of the Professionals for their work in the 2004 Cases. On the same day, he filed identical pleadings in the 2005 Cases. The allegations set forth in support of the motions claim that the professionals knew that the financial projections provided to support the first Chapter 11 filing were inaccurate and the funding inadequate, but they failed to notify the court. After confirmation of the 2006 Plan

and the creation of the Liquidation Trust, the Trustee filed supplements to the motion to vacate and reconsider in the 2005 Cases.

On January 19, 2007, the bankruptcy court denied the Trustee's motions to vacate and reconsider on multiple grounds. The bankruptcy court docketed the identical opinion in both the 2004 and 2005 Cases, and it entered separate orders in each case denying the respective motions. *See In re High Voltage Eng'g Corp.*, 360 B.R. 369 (Bankr.D.Mass.2007) (docketed in the 2005 Cases as # 2523); (Docket # 5, Ex. A # 2527 (order denying motion in the 2005 Cases)); *In re High Voltage Eng'g Corp.*, 363 B.R. 8 (Bankr.D.Mass.2007)[2] (docketed in the 2004 Cases as # 1231); (Docket # 5, Ex. B # 1232 (order denying motion in the 2004 Cases)).

### E. Appeal of the Denial of the Motion in the 2005 Cases Only

On March 9, 2007, the Trustee filed a Notice of Appeal in this court of the bankruptcy court's decision in the 2005 Cases only. (*See* Docket # 1.) Evercore responded with a motion to dismiss on the grounds of *res judicata* and judicial mootness by virtue of the order denying the identical motion in the 2004 Cases, which the Trustee did not appeal and which is no longer appealable. (Docket # 5.) The remaining appellees filed a statement in support of Evercore's motion. (Docket # 8.) Appellant opposes the motion. (Docket # 15.)

### III. Discussion

 The time to appeal the order of the bankruptcy court in the 2004 Cases, entered on January 19, 2007, denying the motion in those cases has passed. *See*

---

**2.** While the text of the opinion is identical for each Bankruptcy Reporter citation, the West

commentary and headnotes differ between the cases, likely the result of different editors.

Fed. R. Bankr.P. 8002(a).[3] Therefore, this court has no jurisdiction to review that order. *See In re Abdallah,* 778 F.2d 75, 77 (1st Cir.1985). Moreover, the bankruptcy court's opinion and order in the 2004 Cases conclusively resolve the issues appealed here, since the Trustee's appeal is based on the identical opinion docketed in the 2005 Cases. (*See* Docket # 1–2 (Statement of the Issues Presented).) Accordingly, *res judicata* bars this court from considering an appeal of the decision of the bankruptcy court in the 2005 Cases. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *cf. In re of Met–L–Wood Corp.,* 861 F.2d 1012, 1016 (7th Cir.1988) ("[A]fter the time for appeal had lapsed, the [confirmation] order could not be attacked in a new lawsuit brought by a party to the sale . . .; such a suit would be barred by res judicata.").

Appellant argues that the 2005 Plan divested the bankruptcy court of jurisdiction over the 2004 Cases. He therefore suggests that the situation merely involves a clerical error by the bankruptcy court that this court can ignore and instead proceed to decide the issues on appeal as though no other final judgment on the merits exists. (*See* Docket # 15, 13–15 (asserting that the appeal is "not rendered moot merely because a copy of the order was also entered on the docket of the 2004 Cases" and "the listing of the Bankruptcy court Order on two separate dockets is irrelevant to the exercise of appellate jurisdiction by this Court").) This argument fails to address the legal and practical complications that would flow from adopting such a course of action.[4] Were this court to follow appellant's suggestion and accept the appeal of the 2005 Cases, it would be possible for the opinion of the bankruptcy court to stand in one case yet be overturned in the other on the same facts. As the Court noted in *Allen,* res judicata "by *preventing inconsistent decisions,* encourage[s] reliance on adjudication." *Allen,* 449 U.S. at 94, 101 S.Ct. 411 (*citing Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)) (emphasis added). Here, the only course of action that preserves the integrity of precedent and "encourages reliance on adjudication" is to bar the appeal. *Id.*

In this case, the Trustee did not appeal the identical decision in both cases within the time allowed. As discussed, *supra,* this court cannot merely ignore the order in the 2004 Cases as though it did not exist and rule on the appeal in the 2005 Cases. Nor is there any mechanism by which this court can now obtain jurisdiction over the decision in the 2004 Cases to correct that error and combine the cases on appeal. The rules are designed to carefully hand off jurisdiction from one court to another to avoid the situation where multiple courts simultaneously rule on identical issues. *Cf. In re Combined Metals Reduction Co.,* 557 F.2d 179, 200 (9th Cir.1977) ("The general rule is that once a notice of appeal has been filed, the lower court loses jurisdiction over the subject matter of the

---

**3.** The rule provides in pertinent part:

The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from.

Fed. R. Bankr.P. 8002(a).

**4.** While acknowledging "[t]he purpose of *res judicata* is to prevent multiple lawsuits, conserve judicial resources and *avoid inconsistent decisions,*" appellant incorrectly asserts that "[n]one of those policy concerns is implicated here." (Docket # 15, 20 n. 19 (emphasis added).)

appeal.... This rule is clearly necessary to prevent the procedural chaos that would result if concurrent jurisdiction were permitted."). Therefore, without jurisdiction to alter the decision in both bankruptcy cases, it is not possible for this court to grant the relief requested by the Trustee. If this error is to be corrected, it could only be corrected by the bankruptcy court, which had jurisdiction over the 2004 Cases. *See Met–L–Wood,* 861 F.2d at 1016 ("The only [ ] remedy [to correct a lawsuit barred by *res judicata*] would be a motion to vacate the judgment under Rule 60(b).").

## IV. Conclusion

Because there exists an unappealable order in the 2004 Cases resolving the issues raised by this appeal, an appeal of the identical decision in the 2005 Cases is barred by *res judicata.* Accordingly, appellee Evercore's motion to dismiss (Docket # 5) is ALLOWED.

Judgment may be entered dismissing the appeal.